JOHN L. BURRIS, Esq./ State Bar #69888
BENJAMIN NISENBAUM, Esq./State Bar #222173
LATEEF H. GRAY, Esq./State Bar #250055
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200          Facsimile: (510) 839-3882

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOLANDA BANKS-REED, individually; S.A.T., a minor, by and through her Guardian ad Litem Ciarra Turner, individually and as successor-in-interest to Decedent SAHLEEM TINDLE; S.I.T., a minor, by and through his Guardian ad Litem Ciarra Turner, individually, as successor-in-interest to Decedent SAHLEEM TINDLE; THE ESTATE OF SAHLEEM TINDLE, by and through its administrator to the LARON MAYFIELD, | Case No.  4:18-cv-05755-YGR |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| | Honorable Yvonne Gonzalez Rogers |
| Plaintiffs, | Date:  October 22, 2019 |
| vs. | Time:  2:00 p.m. |
| | Ctrm: 1, 4th Floor |
| BAY AREA RAPID TRANSIT, a municipal corporation; CARLOS ROJAS, individually and in his official capacity as Chief of Police for BAY AREA RAPID TRANSIT police department; JOSEPH MATEU III, individually and in his official capacity as a police officer for BAY AREA RAPID TRANSIT police department; and, BAY AREA RAPID TRANSIT police officers DOES 1-50, inclusive, | Trial; February 3, 2020 |
| Defendants. | |
| / | |

**TABLE OF CONTENTS**

Introduction ......................................................................................................................... 1

Statement of Facts ............................................................................................................... 1

A. Defendant Mateu Shoots Decedent Tindle in the Back ................................................ 1

   1. The Shooting According to the Video ........................................................................ 2

   2. Defendant Mateu's Versions of the Shooting ........................................................... 3

B. Defendants Represent Argument and Legal Conclusions as Material Facts ................ 5

Argument ............................................................................................................................. 5

A. Legal Standards on Summary Judgment ...................................................................... 5

B. Defendant Mateu's Use of Force was Unreasonable ................................................... 6

   1. Objective Reasonableness and Qualified Immunity Legal Standards ...................... 6

   2. Objective Reasonableness Analysis .......................................................................... 8

   3. Qualified Immunity Analysis .................................................................................. 10

C. Defendant Mateu's Conduct Shocks the Conscience in Violation of the Fourteenth Amendment 11

D. Material Fact Questions Preclude Summary Judgment on Plaintiffs' *Monell* Claims ............... 12

E. Material Fact Questions Preclude Summary Judgment as to Plaintiffs' State Law Claims ........ 13

   1. California Civil Code section 52.1 (Bane Act) ...................................................... 13

   2. Wrongful Death Negligence .................................................................................. 14

F. Punitive Damages are Warranted ............................................................................... 15

Conclusion ........................................................................................................................ 16

# TABLE OF AUTHORITIES

## Cases

*A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016)............................................8

*Anderson v. Creighton*, 483 U.S. 635 (1987)............................................................................8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...............................................................5

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ................................................................................8

*Boyd v. Benton Cty*, 374 F.3d 773 (9th Cir. 2004) ....................................................................12

*Brown v. Ransweiler*, 171 Cal.App.4th 516 (2009) ..................................................................15

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) ..................................................................7

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014) ...............................................13

*City of Canton v. Harris*, 489 U.S. 378 (1989) ........................................................................12

*Cornell v. City and Cty. of San Francisco*, 17 Cal.App.5th 766 (2017)..........................................13

*Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991) ......................................................9, 10

*Dang v. Cross*, 422 F.3d 800 (9th Cir. 2005)..........................................................................15

*Delgado v. McDonald*, 2017 WL 1489269 (ND Cal. 2017) ..........................................................9

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992) .............................................6

*Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998 (9th Cir. 2017)......................................8, 10

*Franklin v. Foxworth*, 31 F.3d 873 (9th Cir. 1994)....................................................................7

*Garcia v. County of Merced*, 639 F.3d 1206 (9th Cir. 2011) ........................................................6

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013)......................................................................10

*Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011)......................................................7, 9

*Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) ....................................................10, 11

*Graham v. Connor*, 490 U.S. 386 (1989) ..............................................................................7, 8

*Gregory v. County of Maui*, 523 F.3d 1103 (9th Cir. 2008).........................................................7

*Hayes v. County of San Diego*, 57 Cal.4th 622 (2013)..............................................................14

*Hayes v. County of San Diego*, 736 F.3d 1223 (9th Cir. 2013)....................................................10

*Hope v. Pelzer*, 536 U.S. 730 (2002) ....................................................................................8

*Howard v. County of Riverside*, 2014 WL 12589650 (CD Cal. 2014)............................................15

1  *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159 (9th Cir. 2013)...................................13

2  *Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996) ..................................................................6

3  *Kisela v. Hughes*, 138 S.Ct. 1148 (2018) .......................................................................11

4  *Lal v. California*, 746 F.3d 1112 (9th Cir. 2014) ...............................................................6

5  *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ...................................................12

6  *Mackinney v. Nielsen*, 69 F.3d 1002 (9th Cir. 1995).........................................................12

7  *Megargee v. Wittman*, 550 F.Supp.2d 1190 (E.D. Cal. 2008)............................................15

8  *Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005)...........................................10

9  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ...................................................ii, 12

10  *Newmaker v. City of Fortuna*, 842 F.3d 1108 (9th Cir. 2016) ...........................................7

11  *Pearson v. Callahan*, 555 U.S. 223 (2009) .......................................................................8

12  *Plumhoff v. Rickard*, 134 S.Ct 2012 (2014) ....................................................................7

13  *Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008)...........................................................11

14  *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ......................................13

15  *S.T. by and through Niblett v. City of Ceres*, 327 F.Supp.1261 (2018) ............................14

16  *Scott v. Harris*, 550 U.S. 372 (2007) ...........................................................................6, 9

17  *Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230 (2007)..................................13

18  *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018) ..........................................6

19  *Young v. County of Los Angeles,* 655 F.3d 1156 (9th Cir. 2011) .......................................9

20

**Statutes**

21  42 U.S.C. § 1983..............................................................................................................7

22  California Civil Code § 3294(a).......................................................................................15

23  **California Civil Code section 52.1** ....................................................................ii, 13, 14

24  Federal Rules of Civil Procedure 56(a)..............................................................................5

25

26

27

28

**INTRODUCTION**

Plaintiffs Yolanda Banks-Reed, et al., brought this action arising from the unlawful shooting death of Sahleem Tindle, by Defendant BART Police Officer Joseph Mateu on January 3, 2018. The shooting was captured on Defendant Mateu's body-camera and shows the officer responding on foot to a report of shots fired and observing two men apparently locked in an altercation, with each of them fighting over, and appearing to have equal possession of, a handgun. Defendant Mateu ordered the men to show their hands. As Decedent Tindle raises his left hand, in apparent compliance with the officer's orders, Defendant Mateu fires three gunshots into Decedent Tindle's back at close range. Defendant Mateu: made no effort to determine which of the two men was responsible for any of the gunshots prior to shooting the Decedent in the back, could not ascertain whether either of the men was in possession or control of the gun prior to shooting the Decedent in the back, and failed to provide the Decedent a reasonable opportunity to surrender prior to shooting him in the back.

Defendant Mateu arbitrarily and unreasonably, subjectively used deadly force on Decedent Tindle. Plaintiffs allege that Decedent was attempting to comply with Defendant Mateu's orders and that every reasonable police officer would know that Decedent was in the act of surrendering at the time Defendant Mateu shot him. Plaintiffs' Opposition to Defendants' Motion for Summary Judgment is based on the arguments made below, on the Declaration of Benjamin Nisenbaum (hereinafter Nisenbaum Declaration), filed herewith and all exhibits attached thereto, on the court's file in this matter and on any such oral and/or documentary evidence presented at the hearing on this motion.

**STATEMENT OF FACTS**

**A. Defendant Mateu Shoots Decedent Tindle in the Back**

On January 3, 2018, at approximately 4:40 p.m., Defendant BART Police Officer Joseph Mateu was working patrol at the West Oakland BART station. (See Deposition Testimony of Joseph Mateu ("Mateu Depo") at 53:14-22, 57:10-18, 58:2-5, attached to the Nisenbaum Declaration as Exhibit A.) Defendant Mateu activated his body cam as he contacted a woman he suspected of fare evasion. (Mateu Depo 59:18-60:3, see Sgt. Mateu's Body Cam Video ("Video") at 0:14-0:40, attached as Exhibit C, attached to the Nisenbaum Declaration.) Defendant Mateu heard two popping

sounds that he realized were gunshots when he saw patrons run into the station and informed him that someone was shooting. (Mateu Depo 60:4-25, 62:8-14; Video 3:18-3:30.) Defendant Mateu began running in the direction the patrons directed him. (Mateu Depo 62:15-17; Video 3:30-3:40.) Defendant Mateu did not observe the shooting himself, and he did not know who had done the shooting or whether anyone had been injured. (Mateu Depo 61:24-62:5, 62:18-23.)

### 1. The Shooting According to the Video

Defendant Mateu observes two men (Decedent Sahleem Tindle and Rayvelle Newton) wrestling on the ground across the street from the BART station. (Mateu Depo 62:24-63:3; Video 3:45.) Mateu draws and points his gun, runs on foot across the street and repeatedly yells for both men to show their hands. (Mateu Depo 73:8-10, Video 3:54.) Two men, who appear to be watching the fracas, run away at the sight of the approaching officer. (Video 3:50-3:56.) Mr. Tindle and Mr. Newton do not comply with Mateu's orders to show their hands or appear to realize that a police officer is contacting them, as Defendant Mateu approaches on foot—not in a patrol car with sirens blaring—and he does not identify himself as a police officer. (Video at 3:54-4:00.) When Defendant Mateu reaches the sidewalk where the men are grappling, he points his firearm at both of them and repeats his order for both of them to show their hands. (Video 4:00-4:02.) During this time, Mr. Newton rolls onto his knees, leans over Mr. Tindle (who is lying on his left side), grasps Tindle's right hand and holds it down to the ground. (Mateu Depo 82:5-15, 90:24-91:7; Video 3:58-3:59.) Mr. Tindle appears to be holding a gun in his right hand. (*Id.*; see also, Still Photo B-1 created by Plaintiffs' Forensic Analyst Expert Gregg Stutchman and taken from an enhanced/clarified version of the Video, attached as Exhibit B to the Nisenbaum Declaration.) Both men have their hands on the object and appear to be in a mutual struggle over the gun. (Mateu Depo 71:22-72:17, 80:13-25; Video at 3:58-4:01.) At this point, neither man has complied with Defendant Mateu's orders to show their hands. (*Id.*)

The video reveals that the men continue to struggle: Mr. Tindle rolls to his knees with his back facing Defendant Mateu and his head down; Mr. Newton raises his body such that he has one knee and one foot on the ground and reaches over the back of Tindle's neck (causing Tindle to hunch down) apparently still grasping onto Mr. Tindle's hand. (Mateu Depo 70:4-8, 80:13-25, 84:21-24;

Video 4:00-4:03, Still Photo B-2.) The gun is no longer visible at this point. (Mateu Depo 69:23-25, 70:16-18, 105:6-22; Still Photo B-2.) Defendant Mateu again orders the men to show their hands. (Video 4:00-4:04.) Mr. Newton does not comply with Mateu's order and continues to hold or grab for Mr. Tindle's right hand. (Still Photo B-3, Video 4:00-4:04.) Despite Newton's continued fight over the gun, Mr. Tindle pulls his left arm out of the struggle and raises his empty left hand in compliance with Mateu's order. (Mateu Depo 70:1-3, 83:12-18; Still Photo B-3, Video 4:02-4:04.) From the video, it appears that Newton is thwarting Tindle from also raising his right hand. (Still Photo B-3, B-4; Mateu Depo 84:21-85:2, 93:12-94:9.) As Tindle raises his left arm, he begins to lift his hips off his feet and Defendant Mateu shoots him three times consecutively without pause in the back while he is on his knees. (Mateu Depo 85:11-86:22, 101:11-18, Still Photo B-6; Video 4:03-4:05.)

Mr. Tindle then falls to the ground and raises both of his arms in the air. (Mateu Depo 101:22-25; Still Photo B-12, Video 4:05-4:07.) Mr. Newton remained on his knees taunting Mr. Tindle and laid on his stomach after Defendant Mateu ordered him several times to do so, having never complied with Mateu's orders to show his hands. (Video 4:10-4:30.)

### 2. Defendant Mateu's Versions of the Shooting

During his Officer Involved Shooting Interview, Defendant Mateu told investigators that he shot Mr. Tindle because he planted his feet and raised his body as though he was trying to stand, that he "feared" Tindle had possession of the gun, and if Tindle had gotten up he could have shot Newton or even the officer himself. (Mateu Depo 89:10-16, 116:8-24, 125:5-126:10, 127:4-17.) During his deposition, Defendant Mateu admitted that Tindle never made a motion that he was going to stand and that his memory of the shooting was better at the time of his OIS interview. (Mateu Depo 19:1-6, 118:3-18.) Defendant Mateu testified that he shot Tindle because: Tindle posed a threat to Newton (not the officer himself); he observed Tindle have control over the gun; Tindle concealed the gun; and Tindle was positioning himself to shoot Newton. (Mateu Depo 108:7-12, 109:20-25.) However, Mateu admitted that at the time of the shooting, Tindle's body was lifting up at the same time he ordered the men to show their hands, and that Tindle had already shown his left hand. (Mateu Depo 108:14-20, 110:1-4.) Defendant Mateu also admitted that he did not see the gun when he shot Mr. Tindle and only assumed that Tindle had the gun based on both men's body language and not hearing

the gun hit the ground. (Mateu Depo 69:23-25, 70:19-72:17.) Defendant Mateu also admitted that Tindle never made any overt threatening gesture indicating that he was going to shoot anyone. (Mateu Depo 110:6-8, 122:16-21.)

Defendant Mateu testified that he shot Tindle three times consecutively without reassessing after each shot, consistent with his training to shoot twice to the body and once to the head when using lethal force. (Mateu Depo 110:9-111:20.) Defendant Mateu also testified that the reasonableness of an officer's use of force is informed by the officer's feelings, including whether he's fearful or frightened and that officers are not trained to contain or overcome their fears, panic or emotional reactions to situations. (Mateu Depo 35:20-37:12.) Defendant Mateu testified that he was trained that officers do not need to give a suspect an opportunity to surrender during an active shooting situation. (Mateu Depo 63:23-64:14.) However, Defendant Mateu claimed to have been trained that suspects may need to move their hands in order to comply with police orders and that he must allow suspects time to comply with an order. (Mateu Depo 66:18-67:4.)

Plaintiffs' Police Practices Expert, Mr. Roger Clark, opined that Defendant Mateu's training that uses of force hinge on feelings of fear and that he was never trained on how to overcome fear when faced with stressful situations, is contrary to POST Basic law enforcement training. (See Roger Clark Rule 26 Report ("Clark Report") at p. 3-12, attached to the Nisenbaum Declaration as Exhibit D.) Mr. Clark also opined that Defendant Mateu made critical tactical errors leading up to the shooting; such as: failing to take any reasonable precautions to ensure he was justified in using deadly force on Mr. Tindle; failing to seek cover or make a tactical approach that would provide for his safety and allow him to assess the situation between Tindle and Newton; and failing to utilize reasonable less lethal force options like continuing to give orders and allowing time for compliance. Clark opined that Mateu used deadly force having not: seen a gun pointed at anyone, or seen any injuries to either suspect, heard any threats uttered and having no idea which man was the assailant. Clark opined that these fundamental tactical errors and gross lack of situation awareness resulted from a series of cascading departures from expected and required tactics and training and ultimate led to Tindle's death. (Clark Report pp. 15-17.)

1

2   **B. Defendants Represent Argument and Legal Conclusions as Material Facts**

3          In their recitation of the facts, Defendants urge that Mr. Tindle does not "surrender" in

4   response to Defendant Mateu's orders to show his hands. (Fact 11, 12, 17, 18, 20.) Defendants are

5   goading this Court to usurp the province of the jury. Whether Mr. Tindle "surrendered" is a question

6   of fact and ultimate issue for the jury to decide. The facts are that: Defendant Mateu ordered both

7   Tindle and Newton to show their hands—not to surrender; Newton used both of his hands to continue

8   to struggle with Mr. Tindle; and Mr. Tindle raised his left arm revealing his empty left hand. Varying

9   inferences can be drawn from these facts: in Plaintiffs' favor, Tindle raised his left hand in

10  compliance with Mateu's order as Newton held his right hand down; or, as Defendants' urge, that

11  Tindle did not comply with the officer's orders to show his "hands" because he only raised one hand.

12         Similarly, Defendants assert that Mr. Tindle "concealed" the gun from Defendant Mateu as a

13  fact. The actual fact is that the gun can no longer be seen when the men roll onto their knees. Viewed

14  in Plaintiffs' favor, the men continue their mutual struggle over the gun when they are on their knees.

15         Defendants accuse Plaintiffs' Police Practices expert of impermissibly speculating and relying

16  inadmissible evidence to render his opinions. Not so. Clark properly represents the facts, and

17  Defendants are improperly asserting that their arguments and factual inferences are undisputed facts,

18  as this Court is legally constrained from viewing the facts and drawing inferences in Defendants

19  favor in deciding their motion for summary judgment.

20                                        **ARGUMENT**

21  **A. Legal Standards on Summary Judgment**

22         Summary judgment is appropriate where the record, read in the light most favorable to the

23  non-movant, indicates "that there is no genuine dispute as to any material fact and the movant is

24  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts may affect the outcome

25  of the case. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts

26  that might affect the outcome of the suit under the governing law will properly preclude the entry of

27  summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). A

28  dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

verdict for the nonmoving party. *Id*. Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id*. (citing Fed.R.Civ.P., Rule 56(e)). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

In determining whether summary judgment is appropriate, the court does not make credibility determinations, or weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). This Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in its favor (*Lal v. California*, 746 F.3d 1112, 1115–16 (9th Cir. 2014) (quoting *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011)), so long as the non-movant's version of the facts is not blatantly contradicted by video evidence. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372, 378–79 (2007)). The mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage. *Scott*, 550 U.S. at 380 (focusing on whether a party's version of events "is so utterly discredited by the record that no reasonable jury could have believed him"). Here, Defendants draw inferences from Defendant Mateu's body cam video in their favor and assert that their inferences are undisputed facts. Indeed, all inferences must be drawn in favor of Plaintiffs.

**B. Defendant Mateu's Use of Deadly Force was Unreasonable**

Defendants contend that the Defendant Mateu's use of deadly force was objectively reasonable, and argue that he is entitled to qualified immunity. Plaintiffs maintains that Defendant Mateu's use of force was patently unreasonable, that material fact questions preclude summary judgment on whether his actions were objectively reasonable, and that viewing the facts in the light most favorable to Plaintiffs, it has been clearly established that his use of force was a constitutional violation.

*1. Objective Reasonableness and Qualified Immunity Legal Standards*

In evaluating a Fourth Amendment claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them" which

1   "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth

2   Amendment interests' against the countervailing governmental interests at stake." *Graham v.*

3   *Connor*, 490 U.S. 386, 396-97 (1989). This analysis involves three steps: 1) assess the severity of the

4   intrusion by evaluating the type and amount of force inflicted; 2) evaluate the government's interest

5   in the use of force, and 3) balance the gravity of the intrusion on the individual against the

6   government's need for that intrusion. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir.

7   2016). However, "[c]ases in which the victim of alleged excessive force has died 'pose a particularly

8   difficult problem' in assessing whether the police acted reasonably, because 'the witness most likely

9   to contradict [the officers'] story…is unable to testify.'" *Gregory v. County of Maui*, 523 F.3d 1103,

10  1107 (9th Cir. 2008) (citation omitted). Thus, the court must assess the evidence to determine the

11  credibility of the officers' account of the events. *Id.*

12      The strength of the government's interest in the force used is evaluated by examining three

13  primary factors: (1) whether the suspect poses an immediate threat to the safety of the officers or

14  others, (2) the severity of the crime at issue, and (3) whether he is actively resisting arrest or

15  attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. The most important of these three

16  factors is whether the suspect poses an immediate threat to the safety of the officers or others. *Id*.

17  These factors, however, are not exclusive. The Ninth Circuit instructs courts to "examine the totality

18  of the circumstances and consider 'whatever specific factors may be appropriate in a particular case,

19  whether or not listed in *Graham*.'" *Bryan v. MacPherson*, 630 F.3d at 826 (quoting *Franklin v.*

20  *Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). Other relevant factors include the availability of less

21  intrusive alternatives to the force employed, whether proper warnings were given and whether it

22  should have been apparent to the officer that the person was emotionally disturbed. See, e.g., *Glenn v.*

23  *Washington County*, 673 F.3d 864, 872 (9th Cir. 2011).

24      However, public officials are immune from suit under 42 U.S.C. § 1983 unless they have

25  "violated a statutory or constitutional right that was clearly established at the time of the challenged

26  conduct." *Plumhoff v. Rickard*, 134 S.Ct 2012, 2023 (2014). To determine whether a government

27  official is entitled to qualified immunity, this Court must determine whether: (1) the facts that a

28  plaintiff has alleged or proved show a violation of a constitutional right, and (2) the right at issue was

clearly established at the time of the defendant's alleged misconduct. See *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

An officer's actions violate a clearly established right when, at the time of the challenged actions, "'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1017 (9th Cir. 2017) (alterations omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). This requirement does not mean that there must be a prior case with identical facts. An officer can still be on notice that his conduct "violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). But, "in the light of pre-existing law [,] the unlawfulness [of the officer's conduct] must be apparent." *Id*. at 739 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

**2. Objective Reasonableness Analysis**

*Nature of the Intrusion*: Defendant Mateu shot Mr. Tindle to death. Clearly, the severity of this intrusion on Tindle's Fourth Amendment interests was "extreme" and "unmatched." *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016).

*Governmental Interests*: The second step is to determine the government's countervailing interests at stake. *Graham*, 490 U.S. at 396.

Here, Mr. Tindle was not actively resisting arrest. Although he was in a serious struggle for possession of a gun, Tindle raised his left hand (the hand not being held down by Mr. Newton) in compliance with Defendant Mateu's order to show his hands. Mr. Tindle complied with Mateu's orders even though Mr. Newton continued the fight with both of his hands and did not attempt to comply with the officers' orders. Although Defendant Mateu testified that Tindle could have done more (such as throw the gun away, and raise both arms without lifting his body, apparently all while Newton was holding his right arm down) to comply to the officers' satisfaction, when viewed in the light favorable to Plaintiffs Tindle was in the process of complying the best he could under the circumstances and did not resist arrest. Even if the Court opines that Tindle failed to comply with Mateu's orders, such failure does not rise to the level of active resistance. See *Young v. County of Los*

*Angeles,* 655 F.3d 1156, 1164 (9th Cir. 2011) (finding that direct disobedience of an officer's order did not amount to active resistance).

The severity of the crime at issue weighs in Plaintiffs' favor. Defendant Mateu responded to hearing gunshots and observed Tindle and Newton in mutual combat and did not observe injury to either man; however, the officer did not have (or attempt to learn) any additional information. See *Glenn v. Washington County,* 673 F.3d at 874 (finding that the "character of the offense" is "an important consideration" especially when no crime has been identified). Defendant Mateu did not know whether either men had fired the shots he heard or whether the shots were attributable to the bystanders he saw flee the fracas as he approached with his gun drawn. Importantly, Defendant Mateu did not know whether Tindle was the aggressor in the mutual combat or the victim and was acting in self-defense, in which case he was not engaged in a crime at all. See e.g., *Delgado v. McDonald,* 2017 WL 1489269 *3 (ND Cal. 2017) (upholding California's self-defense instruction Cal.Crim. No. 3471 in federal habeas matter).

Leaving the main question: whether Tindle was an immediate threat. Plaintiffs maintain that questions of fact preclude summary judgment on this issue. First, contrary to Defendant Mateu's OIS justification for the shooting that he feared for his own life, Tindle was not a threat to the officer. See *Curnow v. Ridgecrest Police,* 952 F.2d 321, 324-25 (9th Cir. 1991) (holding that deadly force was unreasonable where the suspect possessed a gun but was not pointing it at the officers and was not facing the officers when they shot.)

Instead, Defendants try mightily to paint the picture that Tindle posed an immediate threat to Newton by drawing inferences from Tindle's actions (as seen in the video) against Plaintiffs and by completely ignoring any inferences to be drawn from Newton's actions. Defendants also espouse as facts things that are not represented in the video; this court does not have to accept those representations that are completely discredited by the video. *Scott,* 550 U.S. at 380. Indeed, the video reveals that the men were in mutual combat, struggling over the gun and both had equal access to the gun. Mr. Newton laid on top of and hunched over Tindle, grasped Tindle's hands, never complied with Mateu's orders to show his hands, never stopped writhing or struggling, and never stopped trying to control the gun. Whereas, Tindle took one hand completely out of the struggle over the gun

to show his empty left hand. A reasonable jury can determine this gesture reveals that Tindle was complying with Mateu's order to show his hands and was in the process of surrendering. As such, without knowing the character of Tindle's underlying crime, and essentially only observing Tindle defend himself against Newton, Defendant Mateu impermissibly used deadly force on Tindle merely because Tindle partially controlled or possessed a weapon. *Hayes v. County of San Diego*, 736 F.3d 1223, 1233 (9th Cir. 2013).

Additionally, Defendant Mateu did not warn Tindle that he would use deadly force if he did not drop the gun. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) (en banc) ("[W]e have recognized that an officer must give a warning before using deadly force 'whenever practicable.'"). An order is not equivalent to a warning that deadly force may be used. See e.g., *Mercado v. City of Orlando*, 407 F.3d 1152, 1154 (11th Cir. 2005) ("The officers identified themselves and ordered Mercado to drop his knife at least two times (once in English and once in Spanish), but he refused without making any threatening moves toward the officers. At no time did the officers warn Mercado that force would be used if he did not drop his weapon").

### 3. Qualified Immunity Analysis

On summary judgment, this Court determines "whether [Defendant Mateu] would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff[s'] favor." *George v. Morris*, 736 F.3d 829, 836 (9th Cir. 2013).

As discussed above, material fact questions preclude summary judgment on whether Defendant Mateu violated Mr. Tindle's constitutional rights. Plaintiffs maintain it was clearly established at the time of the incident that using deadly force on a suspect who the officer could not say had committed a crime, is engaged in mutual combat over a gun, and in the process of complying with orders to show his hands was a constitutional violation. See *Lopez v. Gelhaus*, 871 F.3d at 1018-19 (denying qualified immunity to officer who shot minor suspect with a toy AK-47 as he complied with officer's orders to turn around); *George*, 736 F.3d at 832 (denying qualified immunity to officers who shot a suspect who was holding a gun but not pointing it at anyone and was in the process of complying with orders to show his hands); *Curnow*, 952 F.2d at 325.

Defendants' citation to *Kisela v. Hughes*, 138 S.Ct. 1148 (2018) is misplaced. There, the officers had a description of a woman was acting erratically with a knife by hacking at a tree and identified her as the suspect based on that description. In addition, the officers were separated from the suspect and an innocent by a chain link fence, and through the fence could clearly see the suspect was armed with a knife. Here, there was no such knowledge that Tindle was the aggressor or wrongdoer, no impediment between Mateu and the fracas, and the weapon was not in view at the time of the shooting. This Court must deny Defendant Mateu qualified immunity.

**C. The Defendant Officer's Conduct Shocks the Conscience in Violation of the Fourteenth Amendment**

Defendants argue that Plaintiffs' Fourteenth Amendment claim fails because Defendant Mateu did not act arbitrarily and is otherwise entitled to qualified immunity. Plaintiffs maintain that Defendant Mateu's use of deadly force was the definition of an arbitrary in violation of the Fourteenth Amendment.

Plaintiffs' Fourteenth Amendment claim requires Plaintiffs prove that the officer's use of force shocks the conscience. *Gonzalez v. City of Anaheim*, 747 F.3d at 797. The primary legal question under this standard is whether it can be met by a showing of deliberate indifference, or whether the plaintiff must instead show a purpose to harm for reasons unrelated to legitimate law enforcement objectives. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). If the circumstances were such that actual deliberation was practical, liability may attach from an officer's deliberate indifference. *Id*. at 1138. "Deliberation" for the purposes of the "shocks the conscience" test is not a literal concept and is not necessarily tied to the amount of time allowed for consideration before action. *Id*. at 1139.

Here, Defendant Mateu shot Mr. Tindle in the back while he was on his knees and his head was down. Clearly, Mr. Tindle was not a threat to the officer. Defendant Mateu observed Mr. Tindle and Mr. Newton embroiled in mutual combat which consisted of the men wrestling to gain possession of a gun. The men were not throwing punches and no one man had the upper hand or was "winning" the fight as it were, and Mateu had no idea which of the men was the aggressor or the victim. Tindle was in the process of complying with Mateu's orders to show his hands; whereas,

Newton did not even attempt to comply. The evidence reveals that Defendant Mateu arbitrarily chose one of the combatants and then shot him to death, even though the one he shot was the only one of the combatants who complied with his orders to show their hands. Defendant Mateu's conduct both shocks the conscience and evinces a purpose to harm.

**D. Material Fact Questions Preclude Summary Judgment on Plaintiff's *Monell* Claims**

The Supreme Court has held that "a municipality may only be sued under section 1983 if the action that is alleged to be unconstitutional implement [ed] or execute[d] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or the city made a deliberate or conscious choice to fail to train its employees adequately." *Boyd v. Benton Cty*, 374 F.3d 773, 784 (9th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)); *Mackinney v. Nielsen*, 69 F.3d 1002, 1010 (9th Cir. 1995)) (internal citations and quotation marks omitted). Defendants move for summary judgment on Plaintiffs' *Monell* claims arguing there is no facts that could give rise to *Monell* liability.

A municipality's failure to train its employees may create Section 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). Defendants argue that there was no underlying violation, and thus no *Monell* violation. Plaintiffs have established Defendant Mateu violated Mr. Tindle's Fourth Amendment rights by shooting him in the back when he did not pose a threat to the officer and by arbitrarily choosing to shoot Tindle when he was a mutual combatant and in the process of complying with the officer's orders.

*City of Canton* holds that the training must be so deficient that it can be said the municipality is deliberately indifferent to the rights of the plaintiff and the citizenry. Here, Defendant Mateu testified that he was trained when using lethal force to shoot twice to the chest and once to the head. Indeed, he shot Mr. Tindle three times without reassessing between shots. This conduct will certainly lead to the death of citizens rather than achieving the goal of eliminating the threat. Moreover, Mateu

shot Tindle in the back based on a belief that he was armed. Other BART Officers have shot suspects in the back in violation of their constitutional rights. *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1170 (9th Cir. 2013). Contrary to Defendants ratification argument, Defendants BART and Rojas had knowledge that its officers impermissibly use deadly force in violation of the constitution. A jury may well determine that this deficiency in training and subsequent ratification of violative conduct is the moving force behind the harm Mr. Tindle and Plaintiffs' suffered.

Defendants' argument on this point must fail.

**E. Material Fact Questions Preclude Summary Judgment of Plaintiffs' State Law Claims**

Plaintiffs maintain that Defendants have waived consideration of their arguments on Plaintiffs' state law causes of action by failing to include these grounds in their pre-filing letter (Document 25) as required by this Court's Standing Order 9(a). As discussed below, neither of Plaintiffs' state law claims are identical to their constitutional claims and Defendants were required to give notice of these additional grounds for their motion. That notwithstanding, material fact questions also preclude summary judgment on Plaintiffs' state law claims.

**1. California Civil Code section 52.1 (Bane Act)**

The Tom Bane Civil Rights Act (section 52.1) civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law where the interference is carried out "by threats, intimidation or coercion." *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citing *Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230, 1242 (2007)). Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims. See *Venegas*, 153 Cal. App.4th at 1245.

The Ninth Circuit has held that "the elements of [an] excessive force claim under Civil Code § 52.1 are the same as under § 1983." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014). However, while the Bane Act does not require the "threat, intimidation or coercion" element of the claim to be "transactionally independent from the constitutional violation alleged ... the Bane Act requires 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Reese*, 888 F.3d at 1043-1044 (citing *Cornell v. City and Cty. of San Francisco*, 17 Cal.App.5th 766 (2017)). When applying the specific intent standard to an excessive force violation, "a mere intention

to use force that the jury ultimately finds unreasonable—that is, general criminal intent is insufficient." *Reese*, 888 F.3d at 1045 (citing *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)). "Rather the jury must find that the defendants 'intended not only to use the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'" *Id*. But it is not necessary for the defendants to have been "thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Id*.

Here, material fact questions preclude summary judgment on Plaintiffs' section 52.1 claim, particularly whether Defendant Mateu had a specific intent to violate Tindle's constitutional rights. A reasonable jury could conclude that Defendant Mateu acted unreasonably and with reckless disregard for Tindle's rights under the Fourth Amendment by arbitrarily choosing to shoot him (not knowing: if Mr. Tindle was armed, the assailant or victim, and when Tindle was in the process complying with the Officer's orders while Mr. Newton did not attempt to comply). See e.g., *S.T. by and through Niblett v. City of Ceres*, 327 F.Supp.1261, 1283 (2018). Additionally, a jury could find that the use of force, that is, shooting Tindle in the back three times, was more than necessary under the circumstances. *Id*.

Defendants' argument on this point must fail.

### 2. Wrongful Death Negligence

Under California law, public employees "are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions, subject to the same defenses available to private persons." *Hayes v. County of San Diego*, 57 Cal.4th 622, 628-629 (2013). In addition, "public entities are generally liable for injuries caused by the negligence of their employees acting within the scope of their employment." *Hayes*, 57 Cal.4th at 629.

"In order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." *Hayes*, 57 Cal.4th at 629 (citations omitted). "Under established law, police officers have a duty to use reasonable care in deciding to use and in fact using deadly force. An officer's lack of due care can give rise to negligence liability for the intentional

1    shooting death of a suspect." *Brown v. Ransweiler*, 171 Cal.App.4th 516, 534 (2009). "[S]tate

2    negligence law, which considers the totality of the circumstances surrounding any use of deadly force

3    is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment

4    when deadly force is used." *Hayes*, 57 Cal.4th at 639. Importantly, the California Supreme Court has

5    reaffirmed long-standing precedent that where an officer's preshooting conduct did not cause the

6    plaintiff any injury independent of the injury resulting from the shooting, negligence "liability can

7    arise if the tactical conduct and decisions leading up to the use of deadly force show, as part of the

8    totality of circumstances, that the use of deadly force was unreasonable." *Hayes*, 57 Cal.4th at 632.

9        Upon approaching Tindle and Newton's physical struggle, Defendant Mateu did not make any

10   attempts to determine who was the aggressor. Tactically, Mateu failed to take cover, despite having

11   obvious locations of accessible cover. See e.g., *Howard v. County of Riverside*, 2014 WL 12589650

12   **9-10 (CD Cal. 2014) (denying summary judgment on negligence because Plaintiff raised several

13   disputed facts regarding cover and the amount of cover the deputies should have had). Mateu also

14   failed to identify himself as a police officer or warn that he would shoot. Given that Tindle was in the

15   process of complying with Mateu's order to show his hands, the lack of proper warnings and

16   announcement of police presence may well have been a substantial factor causing Tindle's harm.

17   **F. Punitive Damages Are Warranted**

18       Punitive damages may be awarded in a § 1983 action "when the defendant's conduct is shown

19   to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the

20   federally protected rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005). A § 1983

21   punitive damages claim is subject to summary adjudication "where plaintiff fails to produce evidence

22   raising a material question of fact regarding aggravating circumstances or the reckless or callous

23   nature of defendant's actions." *Megargee v. Wittman*, 550 F.Supp.2d 1190, 1214 (E.D. Cal. 2008).

24   Under California law, a plaintiff may seek punitive damages "where it is proven by clear and

25   convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ.

26   Code § 3294(a).

27       As explained above, there are material fact questions about whether Tindle posed an

28   immediate threat to Defendant Mateu or Newton's safety. A reasonable juror could conclude that

Defendant Mateu acted with reckless disregard (or malice) to the Tindle's Fourth Amendment rights in using lethal force by shooting Mr. Tindle, who was in the process of complying with the Officer's orders, in the back while he was on his knees with his head down and in mutual combat with Newton. Summary judgment is not appropriate on the issue of punitive damages.

**CONCLUSION**

Based on the foregoing, this Court must deny Defendants Motion for Summary Judgment.

Dated:  September 24, 2019                    **LAW OFFICES OF JOHN L. BURRIS**


                                             /s/ Benjamin Nisenbaum
                                             Benjamin Nisenbaum
                                             Attorney for Plaintiffs